USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/12/09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
AES GENER, S.A.,  :

              Petitioner,  :

  -against-  :

COMPANIA CARBONES DEL CESAR S.A.,  :

  :

              Respondent.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

08 Civ. 10407 (WHP)

MEMORANDUM & ORDER

WILLIAM H. PAULEY III, District Judge:

      Petitioner AES Gener, S.A. ("AES") filed this action to compel arbitration of a dispute with Respondent Compañia Carbones del César, S.A. ("CCC") pursuant to the Federal Arbitration Act ("FAA"). For the following reasons, the petition is denied.

## BACKGROUND

      On August 30, 2004, AES, a Chilean corporation, entered into an agreement with CCC, a Colombian corporation, to purchase quantities of "steam coal" (the "Agreement"). (Petition dated Dec. 1, 2008 ("Petition") ¶ 6.) Section 17 of the Agreement provides that "[a]ny dispute, controversy or claim arising out of or relating to the validity, interpretation, application, or termination of this Agreement shall be settled by arbitration pursuant to the laws of the Laws of The State of New York" (the "Arbitration Clause"). (Petition ¶ 15, Proposed Request for Arbitration dated Dec. 1, 2008 ("Proposed Arbitration Request") Ex. 1: Agreement at 13.) The Arbitration Clause also states that "[i]n the event of any dispute, difference or question arising between the parties to this Agreement as to any matter . . . arising under this Agreement, PARTIES AGREE THAT IT MUST BE SOLVED AMICABLY IN FIRST INSTANCE. Then,

if not possible, either party may give to the other party notice of the dispute or difference." (Agreement at 13 (emphasis in original).) The Agreement also allowed 7 days after notice for the parties to "discuss ways of resolving the dispute," and required arbitration if the dispute was not resolved within 14 days. (Agreement at 13-14.)

On March 15, 2006, CCC notified AES that it would not deliver coal pursuant to the Agreement. (Petition ¶ 7.) By letter dated April 17, 2006, AES "formally request[ed]" that CCC resume coal shipments in May and informed CCC that non-delivery would constitute a material breach. (Petition ¶ 10, Proposed Arbitration Request Ex. 5: Letter from AES to CCC dated Apr. 17, 2006 ("April 2006 Letter").) AES's letter also invoked section seventeen of the Agreement by "request[ing] that CCC's representatives meet with our representatives as soon as possible to make a good-faith effort to amicably resolve the dispute. . . . This letter shall serve as formal notification as required by section seventeenth of the [Agreement]." (April 2006 Letter at 2.) On May 26, 2006, AES informed CCC that it was suspending its own performance because of CCC's material breach. (Petition ¶ 11.)

Nevertheless, the parties continued their efforts to resolve the dispute over the next two years. (Petition ¶ 12.) But those efforts were not successful.

Unbeknownst to CCC, AES filed this action to compel arbitration on December 1, 2008. However, on that same day, AES elected to pursue CCC on a parallel track. AES notified CCC by letter that "in accordance with Clause Seventeenth . . . of the [Agreement], this letter serves as AES' formal notice of Dispute to CCC," and that "if CCC's representatives fail to meet with AES' representatives within the next seven (7) days following CCC's receipt of this [letter], and if the Parties are unable to resolve the Dispute within fourteen (14) days following the date

of the [letter], AES will further proceed with arbitration against CCC in accordance with the [Agreement]." (Declaration of Mark A. Kornfeld dated June 15, 2009 ("Kornfeld Decl.") Ex. 1: Letter from AES to CCC dated Dec. 1, 2008 ("December 1 Letter") at 2.) On December 9, 2008, unaware of AES's action in this district, CCC acknowledged receipt of AES's letter, and proposed to meet on January 15, 2009. (Kornfeld Decl. Ex. 5: Letter from CCC to AES dated Dec. 9, 2008.) On December 18, 2008, AES "confirm[ed] that [it] also wishe[d] to find an amicable resolution to the disputes between AES and CCC," and agreed to meet with CCC on January 15, 2009, so that the parties could resolve matters by February 17, 2009. (Kornfeld Decl. Ex. 6: Letter from AES to CCC dated Dec. 18, 2008 ("December 18 Letter") at 1.) In its December 18 Letter, AES also "respectfully demand[ed] that the parties commence arbitration pursuant to Clause Seventeen . . . of the [Agreement]," and "[o]nce [CCC] confirm[s] that [it] will voluntarily submit to arbitration, [AES] will forward to [CCC's] attention a demand for arbitration." (December 18 Letter at 2.) In a curious sleight of hand, the December 18 Letter also warned CCC that if it did not submit to arbitration, AES would seek to compel it. (December 18 Letter at 2.)

Thereafter, CCC sought to adjourn the scheduled January 15 meeting to February 3, 2009. (Kornfeld Decl. Ex. 7: Letter from CCC to AES dated Jan. 12, 2009 at 1.) AES agreed to CCC's request, but proposed February 2 instead of February 3 for the rescheduled meeting. (Kornfeld Decl. Ex. 8: AES Letter to CCC dated Jan. 15, 2009 ("January 15 Letter") at 1.) AES also announced cryptically "we have no choice but to proceed with the arbitration process as we have previously." (January 15 Letter at 1.) In an email dated January 23, 2009, AES agreed to a second adjournment of the meeting to February 24, 2009. (Kornfeld Decl. Ex. 10: Email from

Luis Sarras to Leonardo Quintero dated Jan. 23, 2009 ("January 23 Email") at 1.) AES also informed CCC that "[a]s we have discussed before and have set forth in our correspondence, we can not allow these scheduling issues to delay the process of arbitration that are [sic] otherwise under way." (January 23 Email at 1.)

On March 3, 2009, this Court granted AES's ex parte motion for alternative service of process and directed AES to personally serve one of three CCC representatives with a copy of the Summons and Petition ("March 2009 Order"). (Docket No. 5.) The Petition attaches a Request for Arbitration, dated December 1, 2008.[1] (Petition Ex. A: Proposed Arbitration Request.) AES served CCC with its Petition in this action on April 21, 2009. (Docket No. 11.)

## DISCUSSION

"A party may seek to compel arbitration 'only when the respondent unequivocally refuses to arbitrate, either by failing to comply with an arbitration demand or by otherwise unambiguously manifesting an intention not to arbitrate the subject matter of the dispute.'" Empresea Generadora De Electricidad Itabo, S.A. v. Corporación Dominicana De Empreseas Eléctricas Estatales, No. 05 Civ 5004 (RMB), 2005 WL 1705080, at *8 (S.D.N.Y. July 18, 2005) (quoting PaineWebber Inc. v. Faragalli, 61 F.3d 1063, 1066 (3d Cir. 1995)). "A party has refused to arbitrate if it commences litigation or is ordered to arbitrate th[e] dispute [by the relevant arbitral authority] and fails to do so." Laif X Sprl v. Axtel, S.A. De C.V., 390 F.3d 194, 198 (2d Cir. 2004) (alterations in original).

---

[1] In their motion papers, AES adds to the confusion with a Freudian slip, referring to its Request for Arbitration as a Proposed Request for Arbitration.

At the time AES filed its Petition, the parties' correspondence contained neither a clear demand to arbitrate the dispute nor an unambiguous refusal. On the contrary, for months after AES filed this action, CCC exhibited a willingness to amicably resolve the dispute. And AES played along. AES simultaneously filed the Petition and asked CCC to meet pursuant to the Agreement. AES's December 1 Letter cautioned CCC that if the parties were unable to resolve their dispute within 14 days, "AES will further proceed with arbitration against CCC in accordance with the [Agreement]." (emphasis added). AES's December 1 Letter merely advised CCC that it would compel arbitration if the parties did not resolve their dispute. CCC has never refused to arbitrate. Nor has it commenced litigation or been ordered to arbitration. See Downing v. Merrill Lynch, Pierce, Fenner, & Smith, 725 F.2d 192, 195 (2d Cir. 1984) ("Unless [respondent] commences litigation or is ordered to arbitrate this dispute by the [relevant arbitral authority] and fails to do so, it is not in default of any arbitration agreement it may have with [Petitioner]."); see also Evans & Sutherland Computer Corp. v. Thomson Training & Simulation Ltd., No. 94 Civ. 6795 (JFK), 1994 WL 593808, at *4 (S.D.N.Y. Oct. 28, 1994) (respondent's initiation of action in the English High Court of Justice seeking an injunction prohibiting arbitration demonstrated refusal to arbitrate).

In its December 18 Letter, AES reiterated its desire to resolve the dispute by agreement and for the first time "demand[ed] that the parties commence arbitration." However, AES never served a request to arbitrate on CCC until April 21, 2009, when it served its Petition in this proceeding that included a Request to Arbitrate as an exhibit. Thus, the earliest date that AES could be said to have demanded arbitration was December 18, 2008. And no matter how hard AES tries, it cannot tease from this record any refusal by CCC to arbitrate. Cf. Faragalli, 61

F.3d at 1067 ("unless and until an adverse party has refused to arbitrate a dispute putatively governed by a contractual arbitration clause, no breach of contract has occurred, no dispute over whether to arbitrate has arisen, and no harm has befallen the petitioner"). Indeed, AES's December 18 Letter makes CCC's point: "if CCC should refuse to voluntarily submit to arbitration, . . . then AES will be forced to seek to compel arbitration against CCC pursuant to the [Agreement]." (emphasis added). Thus, this Court sua sponte questions its jurisdiction over this action. See Faragalli, 61 F.3d at 1067 ("[I]t is doubtful that a petition to compel arbitration filed before the 'adverse' party has refused arbitration would present an Article III court with a justiciable case or controversy in the first instance.").

AES's insistence that CCC voluntarily submit to arbitration is similarly perplexing. Neither the Arbitration Clause nor New York law require AES to obtain CCC's consent to commence arbitration. The Arbitration Clause merely provides that if the dispute is not resolved within 14 days after notice is given, the dispute "shall be settled by arbitration pursuant to the Laws of The State of New York, United States of America." New York law permits AES to give notice to CCC of its intent to arbitrate and proceed with arbitration irrespective of whether CCC responds. See N.Y. C.P.L.R. 7506(c).

Finally, AES advances one last bootstrap argument—that CCC's opposition to the Petition is evidence of CCC's refusal to arbitrate. However, a "challenge to arbitrability does not constitute a refusal to arbitrate." Empresa, 2005 WL 1705080, at *8 (quoting Jacobs v. USA Track & Field, 374 F.3d 85, 89 (2d Cir. 2004)). Thus, AES's argument is unavailing.

CONCLUSION

For the foregoing reasons, the petition to compel arbitration is denied. The Clerk of the Court is directed to terminate all motions pending as of this date and mark this case closed.

Dated: August 12, 2009
      New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of record:*

Jessica Pesce, Esq.
Hogan & Hartson LLP
875 Third Avenue
New York, NY 10022
*Counsel for Plaintiff*

John Fellas, Esq.
Hughes Hubbard & Reed LLP
350 South Grand Avenue, 36th Floor
Los Angeles, CA 90071
*Counsel for Respondent*